**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:26-cr-00014-JRS-KMB-1 |
| | ) | |
| | ) | |
| SHAYLA ADDISON, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

The sentencing decision in Ms. Addison's case may be one where "the kinds of sentences available" (18 U.S.C. § 3553(a)(3)) assumes greater than average significance as a relevant factor in sentencing.   Ms. Addison is 28 years old, expecting a child in January 2027, and facing severe consequences for an early-morning impulsive 13-minute angry outburst triggered by news reports of mutually disrespectful verbal conflict on the floor of the House of Representatives. The defense would argue that a sentence constructed with a combination of conditions of incarceration, house arrest, and community service may serve as one "sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

The offense conduct in this case, as appears to have been true of the offense conduct in three prior misdemeanor Invasion of Privacy convictions, was marked by a lack of anger management tools combined with impulsive behavior. (PSI ¶¶ 28, 29, 30). A childhood marked by abuse, intermittent poverty, and instability may well have contributed to this pattern of bursts of reactive behavior.

Incivility in electronic public discourse, fueled by an army of internet "trolls" and

"bots", has become background noise in modern society. That incivility, a blight on the body politic, has become somewhat normalized across social media platforms. Ms. Addison's messages to Victim 1 would have constituted a crime if delivered to any person but assumed a greater significance because of Victim 1's status as a sitting member of Congress. Ms. Addison's messages (PSI ¶¶ 7, 8, 9) rose above the electronic background noise. "Hoe we will kill you and blow that whole building up" clearly merited a visit from FBI agents.

Victim 1's brand of performative politics has triggered legions of angry public responses. The general political environment was encapsulated by proposed House Resolution 1599, offered by Representative Luna on November 26, 2024.

### RESOLUTION

Condemning the death threats against Representative Nancy Mace.

Whereas, on November 18, 2024, Representative Nancy Mace introduced a resolution prohibiting Members, officers, and employees of the House from using single-sex facilities other than those corresponding to their biological sex;

Whereas, after introduction of this resolution, Representative Nancy Mace has received multiple death threats;

Whereas one of the death threats came from a video posted on social media with the statement "This video goes out to Congresswoman Nancy Mace. Congresswoman Nancy Mace, I hope that one day I do find you in that woman's bathroom and I grab your ratty looking f—ing hair and drag your face down to the floor while I repeatedly bash it in until the blood's everywhere and you're dead.";

Whereas another death threat came from a phone call with a blocked number where it was stated that "We're killing her. She'll die today.";

Whereas another death threat came from a post on social media with the statement "Prepare to die @repnancymace.";

Whereas another death threat came from a phone call where it was stated "Nancy Mace doesn't deserve to be alive.";

Whereas another death threat came from a phone call where it was stated "Kill yourself motherf—er.";

Whereas another death threat came from a phone call where it was stated "We know where you are, we're going to kill you, Nancy."; and

Whereas another death threat came from a phone call where it was stated "I never pray but I'm praying that Nancy Mace gets Stage 4 Ovarian

Cancer and her children have to watch her suffer.": Now, therefore, be it
*Resolved,* That the House of Representatives—
(1) strongly condemns the death threats being sent to Representative
Nancy Mace; and
(2) condemns all threats of violence.
https://www.congress.gov/bill/118th-congress/house-resolution/1599/text

As of November 2025, Victim 1 claimed to have received more than 1,300 threats per year. https://www.wjcl.com/article/nancy-mace-charleston-airport-police/69237029

As suggested in defense comments, Ms. Addison's January 15 outburst related to a widely reported and somewhat juvenile verbal exchange between Victim 1 and Rep. Jasmine Crockett in a House of Representative hearing on January 14, 2025. Addendum to PSI, Docket 19. "If you want to take it outside" was a theme both of the exchange between representatives and Ms. Addisons's missives. Ms. Addison, at some level, felt disrespected by the comments directed toward Rep. Crockett and impulsively acted out from a keyboard. Ms. Addison had been engaged in counseling with Limelight Recovery in Indianapolis as a condition of probation for the offense noted at paragraph 30 of the PSI at the time of the offense conduct.   She continued the counseling sessions of her own volition afterward until a lapse in insurance coverage brought the counseling to an end.   No further messages to Victim 1 ensued.

Ms. Addison is expecting the birth of a child on January 28, 2027. Ms. Addison's personal history suggests that risks may attach. PSI ¶ 50. While the timing of this event is not ideal, the child's welfare deserves some consideration in a sentencing decision in this case.

Postpartum contact between mother and infant offers sociological benefits

by fostering secure attachment, which improves the child's long-term social skills and resilience, and by promoting positive mental health in the mother through reduced stress and enhanced self-esteem. This early bonding provides a foundation for healthy future relationships for the child and can decrease risks of postpartum depression and anxiety for the mother. *Daily mother-infant skin-to-skin contact and maternal mental health and postpartum healing: a randomized controlled trial*, Cooijmans, Beijers, Brett, and Weerth, Scientific Reports, June 17, 2022, https://www.nature.com/articles/s41598-022-14148-3#:~:text=Daily%20skin%2Dto%2Dskin%20contact,a%20healthy%20subclinical%20sample26., last visited July 7, 2026.

The Federal Bureau of Prisons Female Offender Manual, Program Statement 5200.07, May 21, 2021, outlines options for childbirth in prison. https://www.bop.gov/policy/progstat/5200.07b.pdf, last visited July 7, 2026.   The default position is grim:

> Administrative discretion is used in deciding to pay for immediate post-natal care of an inmate's child while in custody when the Bureau finds itself responsible for the cost by default (no other resources can be compelled to pay). It is reasonable that the Bureau provides for the child's medical expenses for the first three days after routine vaginal birth or up to seven days for a Caesarean section.
> Prior to the birth, the mother must make arrangements for a custodian to take care of the child. At this time, the CEO ensures the person or agency taking custody of the child is also asked to be responsible for medical care costs beyond three days after birth. (**Note**: This may be extended by the Regional Director for an additional seven days for extenuating circumstances on a case-by-case basis.) The person(s) receiving custody of the child should sign a Statement of Responsibility for medical care costs, clearly indicating that the signing party accepts financial responsibility. Unit management advises the inmate to obtain the statement while the inmate is still in the institution. Unit management will then forward copies to the Health Services Administrator (HSA) for placement in the HSA's outside hospitalization file,

and to the Business Office. Manual, p. 18.

A possible placement within the Bureau of Prisons is a Residential Parenting Program (RPP).    This program is an option for the Bureau of Prisons (or at least was an option at the time of the Program Statement) and is offered by Washington state, the only state in the union to offer services for pregnant federal prisoners. Manual, pp. 20-21. This program allows designated pregnant inmates to give birth and reside with their child for up to 30 months post-delivery. If Ms. Addsion were allowed to participate in this program, she would be designated to Washington Correctional Center for Females in Gig Harbor, Washington. A requirement for participation is that a candidate must "be scored as minimum security with Out or Community custody", Manual, p. 20. The prison's RPP program is only open to a small number of pregnant women — up to 20 at a time. https://www.npr.org/2018/12/06/663516573/programs-help-incarcerated-moms-bond-with-their-babies-in-prison#:~:text=The%20prison's%20RPP%20program%20is,him%20as%20if%20for%20emphasis, last visited July 7, 2026.

Ms. Addison's predicted security level assessment is uncertain. Her chances at a minimum-security classification would be improved were she allowed to self-surrender for service of a custodial sentence.    Under Federal Bureau of Prisons classification, a voluntary surrender results in a 3-point reduction to an inmate's Custody Classification Score, placing them closer to minimum-security camp eligibility. Program Statement P5100.08, https://www.bop.gov/policy/progstat/5100_008_cn-3.pdf. This reduction applies

to women in the federal system, provided the surrender is not on the same day as sentencing or a supervised release violation.

Ms. Addison's case represents a small snapshot of a larger picture. The notion that the sentence imposed promote respect for the law assumes a greater significance when considered in the context of an estimated annual1600 threatening comments directed toward a single elected official. Ms. Addison was 576 miles from Washington DC on the date of the offense and there is no reason to believe that she posed any real danger to Victim 1.   Neither is there reason to believe that the threats had any more than a minor incremental impact on Victim 1 or her staff. The defense submits that a combination of supervise release conditions, including a term of house arrest, are in the Court's toolkit for use in fashioning a sentence that is sufficient, but not greater than necessary, to address the sentencing goals outlined in 18 U.S.C. § 3553(a).

*William H. Dazey, Jr.*
William H. Dazey, Jr.
Indiana Federal Community Defenders, Inc.
111 Monument Circle, Ste 3200
Indianapolis, IN. 46204
(317) 383-3520
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on July7, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*William H. Dazey, Jr.*
William H. Dazey, Jr.